Good morning, Your Honors. May it please the Court, I'm Trent Orr representing the California Sportfishing Protection Alliance. At base, there are only two questions here that really need to be answered in determining whether the mandatory consultation requirements of Section 782 of the Endangered Species Act, which I'll refer to as ESA, have been triggered for the Federal Energy Regulatory Commission, or FERC. The first is, is it the case that operation of this FERC license process may affect the threatened spring-run Chinook? I thought the first question was, is there an action? In order for the right of consultation to operate, there has to be an action by the agency. And in we have a couple of cases, Sierra Club, the Judge Trott Road, as I recall, and Simpson Timber, where we say no action, no duty to consult. No, that's not correct, Your Honor. Those cases do not say no action. What those cases say is that the Federal agency in each case, and they're very searching examinations, did not have the retained authority, that is, it didn't keep what the Court has termed as the ---- That's why there was no action, as distinct from where there's some continuing day-to-day regulation. The analysis, for example, in Sierra Club, the Court was looking at a road that had been permitted to a private party, and the question was, when a species was listed, that that road might affect, did the agency that permitted that road, the Forest Service, have the ability to or maybe it was the Bureau of Land Management, did the Federal agency have the ability to take any action to affect or protect the species? There was no question as to whether there was the initial Federal action. Action under the Endangered Species Act is defined very broadly to include licensing. I'm sorry. I didn't make myself clear. Let me make myself understandable. If I understand the case right, and you educate me if I do not understand it right, the government gave a permit for the dam years ago, dam was built years ago. That was an action. Right now, the outfit operating the dam has a right to do so as long as they conform to the permit. The permit's up for renewal a few years down the road. Renewal will be an action. But in between, no action by the agency, maybe action by the weather or the fish, but no action by the agency. That's the way it looks to me. Yeah. No, I understand that that's the way it looks, but that's not the way the law of the Ninth Circuit in this area operates. Maybe you could focus on the facts. Tell me if I've got them wrong, and then move to whatever case you think is analogous to these facts. There are additional facts, Your Honor. The fact here is that, number one, licensing this agency is clearly a Federal ad, licensing this project is clearly a Federal action. Yeah, but they licensed it years ago. The license has two specific provisions in it, Articles 15 and Article 37, which specifically retain to the agency ongoing jurisdiction to modify the project at any time to protect fish and wildlife, which would clearly include a fish that's listed as endangered during that penalty. That's exactly what was missing from both the Sierra Club case and from the ---- It's in the license, Article 15. You've paraphrased. There's another wrinkle in there. The Commission reserves the right after notice and opportunity for hearing. They don't have the plenary right without notice and opportunity for hearing to require changes in the project. And I think that's a ---- that makes a difference. Well, under the analyses of this Court, I don't really see why in the recent ---- well, relative, not that recent case of Turtle Island Network. What the Court said was if the agency has retained jurisdiction such that it could cause some changes to benefit the species, and it specifically says there's no requirement that it either has acted or that it will necessarily act. If it has retained jurisdiction that it could act, then it's required to do so. Let me ask you this. In Turtle Island, do you read that case as saying that the agency had to go back and change the permits that it already issued? No. I don't read this case. Isn't that how you're reading this case? No. What I'm saying, all that we're saying, the Petitioners in this case, is that the agency, not that it has to institute one of these proceedings under the license, that it merely because it has the ---- retained the capacity to fix problems if they're identified, then it has a mandatory duty under the ---- Under the statute? Under the Endangered Species Act, under Section 7a, to consult with the agency that's the expert on this newly listed species, which is clearly affected by this project, and get its advice. What is the event that triggers that obligation here? The event is the listing of the species. Okay. Well, you have an ongoing license, Your Honor, that says ---- On my island, though, the event was issuing permits. They're continuing to issue permits. Here, the permit was issued years ago. But what these cases ---- Endangered species isn't an action by the government. It's an action by the fish or by the weather. No. It is an action by the ---- I mean, the fish get in biological problems. They then are listed. What the Endangered Species Act says is that any Federal action, which this Court has defined to include ongoing actions, indeed, the Supreme Court in the Tennessee Valley Authority v. Hill case, which is one of the seminal Endangered Species Act cases, says that ongoing actions will sometimes have to be changed. That is true. And what they did was they stopped the ---- the flooding of the dam. Now, what is the ---- because the action, as I under ---- as I read, the act was the contemplated filling of the dam that was going to endanger these snail darters. Now, the act here appears to be the operation of this ---- That's correct. ---- which is under the continuing oversight of the Federal Energy Regulatory Commission through its reserve power to change operations or facilities in order to protect fish. It has, in fact ---- Now, you're saying that inaction is an action. Yes. You're saying that since, although they haven't ---- they issued the permit years ago, they could take an action to change the permit. They have to give notice in a hearing, as Judge Pratt said, to change the permit, but then they could take an action to change the permit. They have taken no such action, and you're saying that's the action. No. What I would say, the action is, just as it was in the Sierra Club case. Maybe I should turn to those cases. Well, Sierra Club was really ---- it goes against you. No, it doesn't, Your Honor. As a matter of fact, the Sierra Club case was a case in which the ---- excuse me a minute here ---- was the Bureau of Land Management. I apologize for saying Forest Service earlier. It had an existing right-of-way agreement with a timber company or a sawmill company. It had granted the right-of-way. Some years later, there was a question as to whether road construction pursuant to that right-of-way would affect the threatened northern spotted owl in its critical habitat. The Court conducted a searching review of the record in that case to find out whether the agency had retained sufficient jurisdiction to take any action that would actually end up affecting that species. And the Court's conclusion turned on the fact that there was no retained discretion to protect the species. As Judge Trott wrote, the Federal agency lacks the discretion to influence the private action. Because it does, consultation would be a meaningless exercise. The agency simply does not possess the ability to implement measures that inure to the benefit of the protected species. Why don't they lack the discretion here? Because they don't ---- they can't do anything without notice and hearing. So they don't have discretion to do anything until they ---- Well, but that is discretion. The standard that the Ninth Circuit has laid out is the question of whether there's reserved jurisdiction sufficient that it could, and this is Turtle Island again, that it could ---- the agency could take measures to protect the species. If you look at Article 15 and Article 37, both require a hearing, yes, but both allow the agency to impose measures without the agreement of the licensee. I mean, all the ---- Those are changes. All the changes in the license. Yeah. But all it's saying ---- They can ---- And those ---- what those provisions say, Your Honor, is that the FERC at any time on its own motion can propose a change in the project. It has to allow a hearing, but I don't see anything in the cases. I see absolutely no support that says that that step means they don't have. And if at the end of that hearing, they determine that there's a need ---- I suppose that any time that there is anything going on by a Federal licensee and the licensee empowers the government to impose changes in the license in certain circumstances, that nevertheless, your advocacy group and any others on either side could demand continuing consultation for the 50 years or whatever these license terms are for the whole time, because at any time, the government would have the power to impose a change. Well, first, the licensee did not ---- That means they would have to pay attorney's fees to your group and consult for a ---- during the whole term of a 50-year license. Well, no, Your Honor. They would only need to consult if between ---- I mean, here's part of the problem. The Endangered Species Act is an extremely powerful act in which Congress has expressed its will that endangered species be given the highest possible priority. You've got another agency governed by the Federal Power Act which can grant licenses of up to 50 years. Those are both true, and they're ---- And they're completely ---- ---- their foundation for my concern. But they're completely reconciled. You can always find some fish or bug that's endangered in a stream. But let me continue. So if one is listed during the pendency of that 50-year license, and the whole purpose that Congress has set forth in allowing that listing is to prevent its extinction, and the Federal Endangered Species Act creates an obligation on a Federal agency to take what measures it can, then I would say, yes, that Congress has intended that agency at that point to consult once. This notion of ongoing consultation or the notion that new species ---- But that's for the whole 50 years. Nature changes every day and every season. Different species may be listed during that term. A consultation then would require a look be taken at whether the project affects the fish or not or the fish or aquatic invertebrate, whatever it may be, the species. And measures may or may not be proposed. It may be found that there really is no effect to the project. I mean, that's really what we're asking here, is that ---- Well, go ahead. Well, it's just that the Federal agency consult with the expert agency, the National Marine Fisheries Service, which is charged with protecting this fish, to find out what they might recommend. That might be a good idea, but your position, as I understand it, is that they are mandated under the statute to do so. I believe that's true, Your Honor. Now, I ---- the act ---- I have ---- I'm troubled by the fact that there was a permit issued a long time ago, and the license was issued, and it's ongoing, and it's being operated by PG&E. I cannot find, but maybe you can help me, any case other than Turtle Island in which there was an ongoing program that the listing of a species was held to require an examination and consultation. And Turtle Island, as we talked about, was prospective with respect to new permits, not to change existing ones. So what ---- where are all the ---- if this duty is as broad as you say, there should be lots of cases saying that they have a ---- that they ought to examine ongoing licenses or something, because there are lots of these things out there, and I can't find any cases. Well, I think this is somewhat of a case of first impression. We've looked as well, but there is the case of Water Watch, which is very similar to this case, a district court case from this circuit, in which the Army Corps of Engineers granted a permit for ---- to a private company to run a couple of pumping stations up in the Pacific Northwest. At some point, whether they were newly listed or someone just discovered that those already permitted, privately operated pumping stations were having an effect on salmon species, a request was brought or a suit was brought saying they need to consult about those pumping stations. The permit or license ---- it was a permit, I guess, in that case, from the Federal agency, the Army Corps of Engineers, provided that the license terms could be changed in the ---- I believe it was very sweeping language, in the public interest, and the public interest was somewhere defined as meaning protection of fish and wildlife, among other things. The court held that the Army Corps of Engineers had a legal duty to consult with respect to the effects of those licensed ---- previously licensed pumping stations on the fish in that case. And the event that triggered that was? The event that triggered that was the fact that it was a federally licensed pumping station by the Army Corps of Engineers. And in that case, I don't know the intricacies of the facts, but in the analysis of the court, what was important to the court, what is important in every decision of this court that's looked at, the question of Federal action and duty to consult is whether the Federal government control and involvement, or they sometimes put the case as continuing decision-making authority, to create measures that would inert to the benefit of the species. And that's exactly the situation we have here. What's been going on short of formal consultation involving FERC and the Chinook salmon to determine whether it's in jeopardy? Well, the ---- I mean, the fish is listed as threatened. You want formal consultation. Has anything been going on short of formal consultation? The agency has been involved, and the licensee has been involved, more the licensee, actually, than the agency, in informal consultation. With whom? With the National Marine Fishery Service. They've been talking to the Fishery Service. You just want it done formally, then. That's the difference. Well, because there's a critical difference between informal consultation is really supposed to just come up with the answer to the question of does this project affect the fish. I don't ---- despite the fact that FERC takes issue with that, I think that the record is replete with evidence that a project that re-plumbs the entire critical habitat of the fish below the dam they operate may affect that fish. So putting that question aside, you've got ---- so, really, informal consultation shouldn't be ---- I mean, there's no real basis for it. We've already answered the question. It's supposed to answer it. Doesn't FERC say this is just a preliminary step in a procedural process, to quote footnote 10 in Sierra Club? They say that, but this is not ---- I mean, they're real. As we spell it on our briefs, and I can go into some detail on this if you'd like, there are real significant differences between informal consultation. The other one they put out there is early consultation. They've now engaged in early consultation on the relicensing of this project in 2009. I don't get the difference. It sounds like you want to consult. They say we don't have to consult, but they are consulting, and you are consulting. And the only difference is, you get attorney's fees if you win the case that you're right to consult. Your Honor, that, I think, is a somewhat cynical characterization. The Gong Show strikes again. What's the difference in consultation? Well, let me go into that. I mean, the practical difference. Under informal consultation, the National Marine Fisheries Service can suggest measures that might protect the fish. The agency, FERC, is under absolutely no obligation to follow those measures. Informal consultation does not give the agency what's called incidental take permission, either through an incidental take statement or an incidental take permit, which basically says some of these endangered species are going to be lost in the course of this project. And that's against the law under Section 9 of the Endangered Species Act. And if you go through formal consultation... That has no practical significance for you. You don't want to take the salmon? No, no. It has practical... We want the salmon not to be taken. It has a practical consequence for my fishing petitioners because it basically says that right now they've got to watch the river every summer to see if there's another one of these major die-offs, if there were in 2015. Let me ask you, before your time is up, about footnote 33 in the commission's decision, I think it was on denying rehearing, tab 77. That footnote 33 kind of impressed me because they're thinking, well, we have a lot of things to consider here, and one of them is stability so that people will build dams, and, of course, that bears on getting enough electricity for the nation. They say that the practical significance of your position, since there are thousands of commission-licensed projects that include provisions reserving commission authority, is immediate formal consultation based on the existence of them whenever a new species is listed would seriously disrupt the hydroelectric licensing program, licenses or a contract intended to provide certainty and stability for the term of the license, which often runs for 50 years. What's your response to that practical concern? Well, my response to that is that the Federal Power Act itself specifically requires the agency to give equal consideration to Fish and Wildlife in its licensing of these dams, that consulting the expert agency on the issue of the dams would ensure licensing of license. No, but in the provisions go on to say that licenses should include conditions that allow the ongoing protection, mitigation, and enhancement of fish. I mean, this was a major change in this law back in 1986, I believe, that suddenly elevated the natural resources of these areas because there are these projects all over the country. Kagan, you have more than used your time. We'll give you a minute or two on rebuttal. All right. Thank you, Your Honor. May it please the Court, I'm Carol Banta for the Commission. We have 20 minutes. I'll be taking 15 and ceding 5 minutes to the intervener, PG&E. I'd like to begin by picking up on some of the Court's questions. Judge Kleinfeld, you're right, the central question is, is there an action? There is no proposed agency action here except the relicensing in the future, and of course, the consultation is ongoing with regard to that. The Babbitt case, Sierra Club v. Babbitt, absolutely does go against the Petitioners. In this case, in that case, there was no agency action. There was the past permit, and the reason the Court looked at what ongoing discretion there might be, if there were enough control and decision-making authority in the agency over this past permit, then the Court might have been able to, in a sense, consider this an agency action, but there wasn't. And similarly, in this case, of course, in the Babbitt case, there was some ongoing oversight and monitoring. It wasn't completely hands-off, but the Court held that it just wasn't enough. Well, this case is a little different. You know what Article 37 says, and why doesn't Article 37 fall within the language in the Turtle Island case that says whether the statutory language confers sufficient discretion so that the agency could condition permits to benefit listed species? Well, the Turtle Island case really goes to the second question, where you do have some ongoing agency action. What discretion does the agency have in performing that action to protect the species? And as Judge Schroeder discussed, Turtle Island, it was ongoing issuance of new permits going on. I think the Court's recent, I believe it was Washington Toxics case, is similar. There's ongoing pesticide registration going on. In this case, there's no ongoing licensing. There's a license that was given. But you reserve the right to require changes in the project and its operation as may be necessary to protect and develop natural resources at the project. So you reserve something, the right to change. Pardon me? You reserve the right to change the project and its operation. Well, as Your Honor pointed out, that's not a plenary right to make changes. It is limited. The commission can't just reopen these licenses without really a basis for doing so. And I would note, although the FERC is not entitled to deference in interpreting the Endangered Species Act, with regard to interpreting the meaning of its re-opener clauses, as well as the limitations on its own action by its governing statute, the Federal Power Act, the commission is entitled to deference as to those interpretations. And the commission said this is a restrained, constrained authority that can only be exercised when there's a particular nexus and substantial evidence to support it. Yeah, but these licenses go on for, what, 50 years? They can. And they deliberately put in this is a long-term license. And isn't the point of having these provisions in the license to protect the environment, the endangered species, to so that the license, the operation of the license can comply with the Endangered Species Act? Well, where there is substantial evidence or supporting evidence that something needs to be done, they do give the commission an ability to act that it wouldn't have otherwise. And but in the ---- And it's just sort of voluntary, and it's not, it's not, it's not pursuant to the statute? If there were, if there were substantial evidence that changes did need to be made and the commission chose not to ---- Is that what this suit is about, though? No. Because in this case, the Petitioners have conceded, I believe, in their reply brief, that they have not suggested any measures be taken. They have not suggested that the commission needs to invoke this retained authority. Their argument is very simple. The existence of the retained authority is enough to make this ongoing operation of the dam. Isn't the consultation a part of the process in order to try to save these little salmon? No. If the ---- well, I will say, picking up on another point that Judge Trott had made, there is an ongoing process. This isn't a situation where the commission is sitting back and saying, we don't care, we don't want to hear about it. But we're talking about this. Sure. But in the course of all this informal consultation and the ongoing monitoring, if there were evidence that something needed to be done, that changes needed to be made, then if the commission failed to act and there was substantial evidence that it needed to act, that would be a different case that the Petitioners have not suggested taking that case. Substantial evidence, where would we find the substantial evidence? Well, if there were mounting evidence, if there were evidence in the court of the ---- in the course of the consultations and the studies and the various progress reports that the project was causing adverse effects and that urgent interim changes were urgently needed, there is case law, I forget whether it's the California case or the Interior case, we cite both of them, that inaction with regard to the reserved authority could be subject to judicial review itself. Let me ask you about that. The way I understood this case in terms of what it's about factually was that the coho salmon that aren't smart enough to swim upstream in the fall like everybody else swim up in the spring instead, and they're not doing well because of a couple of warm summers. So the question is whether to consult on whether to do anything about that. Now, let's say hypothetically that the agency was totally unreasonable, it's killing all the spring-run coho salmon, and it doesn't care because its focus is on electricity. Is there some mechanism? I suppose they can write letters, they can make phone calls, send e-mails, put ads in the back page of the front section of the New York Times. Is that the mechanism for getting the agency to do something? No. It could be a petition before the commission urging that measures need to be taken and failure. They could also file a petition? Yes. Yes, they could. And the commission can. Even though there's no action, they can file a petition requesting an action? Sure. What action would they request? Formal consultation? No. They would be asking the commission to invoke its to impose measures, which the Petitioners have not done here. The Petitioners, in a sense, want to put the cart before the horse and say formal consultation as to no proposed agency action. But in that instance, there would be a showing of a need for agency action. Say they did that. I mean, my guess is that most Federal agencies, they consult with each other in Fish and Wildlife and all these different services, and they'd probably do something on their own. But let's just say hypothetically they do nothing, and there's a petition that they take an action to protect the spring-run salmon, and the agency just blows it off, does absolutely nothing, no response. Can the Petitioners then appeal after the agency has sat on the petition for a period of time or petition for review here? Yes, because there is the case law saying that the inaction would be judicially reviewable. Now, what happened, maybe a good analogy is to the Idaho Power and American Rivers, the Idaho Power case, the American Rivers case in the D.C. Circuit. That was about formal consultation. But it was a petition saying, commission, you need to engage in formal consultation. And instead of saying, no, we don't, the commission just said, just didn't answer it for years. They took a mandamus petition to the D.C. Circuit, and the D.C. Circuit said, answer them. We don't care what your answer is. We're not speaking in this case what your answer should be. You've answered these quickly in the Felt, Stodge, and Puget Sound cases. Give them an answer. I understand that. I'm not quite understanding what they petitioned here in 2004, right? I believe that's right. For the FERC to initiate formal consultation. Yes. You're saying that they didn't ask them to do the right thing? Well, they have said in their briefs, and I'm sorry, I don't have the page site, that they don't suggest that any particular measures, they don't suggest that the they want us to consult on an agency action where there's no proposed agency action. So you're saying petitioning to say you should do something for the fish is one thing. Petitioning to say that you should talk to them is different? Well, petitioning to say you're required to do something for the fish is what's what? Well, they're saying it's not that we're not doing anything for the fish, of course. There is an ongoing process, and there has been before. The argument that you are legally required to initiate formal consultation right now, and the only agency action, if you're going to rely on Section 7, there must be, 7A2, there must be an agency action. This court in Defenders of Wildlife said that Section 7A2 is a do-no-harm directive with regard to affirmative agency actions. And in this case, there was no proposed action. And there is ongoing consultation with regard to what's going on with the fish. Is there any need for interim measures? The consultation that's going on, although it is linked to the relicensing, it is not exclusively considering relicensing several years down the road. The Commission has made very clear that we are to consider, that all parties are to consider any current effects, any current need for interim measures. And that case is, or that question is before NOAA Fisheries now. What you're reading to, Section 2, is if it said the agency shall in consultation with or with the assistance of the Secretary ensure that any future action authorized or funded. I mean, we have an action. There's an, there's a, they're operating. Well, no, there, I believe under these courts, we believe under these courts, this court's precedence, that there is a distinction between a license that was granted in the past and, and what is the triggering event now? What are the cases that draw that distinction precisely? Well, that draw that, that precisely, Defenders of Wildlife in particular talks about a do-no-harm directive with regard to affirmative agency actions. It talks about the need for there to be, it uses the word affirmative several times, and refers to the fact that in contrast to Section 7A1, which is a different issue that we don't have here, the Defenders of Wildlife discuss that. Of course, the, the key case on this is Babbitt, and many of the subsequent cases have discussed Babbitt. Turtle Island, through a distinction between the ongoing agency action of issue, continuing to issue permits, as opposed to the completed agency action of having given the permit, and the more recent cases in Washington Toxics and Defenders of Wildlife have recognized the distinction between the Babbitt situation and the Turtle Island situation. So the case that's closest to this, you would say, where we held that there is no agency action triggering any obligation to consult is, is which Babbitt? Sierra Club versus Babbitt. There are a lot of Babbitt cases. Right. There are a couple of Sierra Club cases in the briefs, so I started thinking of it as Babbitt, but the, the BLM right-of-way case. There's an interesting atmospheric floating around in the record. It seems on October 11th of last year, FERC asked NMFS for a preliminary biological opinion within 135 days. The 135 days would have expired on February 23, 06. Have you received a preliminary biological opinion as to what the potential is on the, on the Chinook salmon, and what is it? No, Your Honor, we, we have not. And. So they blew the 135 day. I, I wouldn't say blew. The, the 135 days is, as I understand it, something that the commission would always put in that sort of letter. The 135 days is actually only required in formal consultation. So you don't have. That's one difference with formal consultation is more rigid timelines that have to be extended under particular circumstances. Here, since it, it was early consultation, the, NOAA Fisheries was not bound by that 135 days as. You didn't get it, is what you're telling me. But there. When do you expect it? We don't know. We're waiting. I, I believe. And what will, what will the effect of that be? If the preliminary biological opinion comes back and says a big effect on the Chinook salmon, what, what might happen then? I believe the, the preliminary biological opinion would also come with measures that need to be taken if, if it made that finding. Measures need to be taken right now. And the commission would, would do something about that. Might that move this whole lawsuit? Sure. I mean, especially if it comes back and says. Should we wait for the preliminary biological opinion and for FERC's reaction to it before we do anything with this case? No, the, the court, the court can dispose of this case without waiting for it. But certainly the fact that, that the Petitioners, all they, they seem to be asking is FERC ask NOAA Fisheries, consult with NOAA Fisheries. That's where we are anyway. And it certainly does go to whether this court should consider this a, a judici, judicial matter that. When, when do you start. Like big fire, little fire. I mean, the preliminary biological opinion could wipe out this whole controversy if FERC gets something and says, uh-oh. Well, we. Uses the authority that you have. Well, we submit that the process has, has overtaken this controversy anyway. Because if the whole point is to get the commission to consult with NOAA Fisheries, we're there. And it's in, the ball is in NOAA Fisheries' court. They're doing the work. They're going to tell us what they think. That's all, it seems to be all the Petitioners have been asking for. They just want it with the particular more formal deadlines and the more formal procedures that, that we submit are just not required by the statute of the case law. If I recall correctly, this dam permit comes up for renewal in a few years. 2009, yes. 2009. Uh, so I suppose there'll be a consultation process that this advocacy group can inject itself into for the renewal, right? Well, sure. And I mean, that's going on now in anticipation. You've already started the consultation on the renewal? That was the, the purpose with the biological assessment and the preliminary biological opinion. The commission made clear. Well, that's about the renewal. Well, it is. But the commission said, look at the current effects as well. Let us know if there are interim measures. That's the problem. That's what I don't understand. That goes to the renewal. It's not necessarily going to trigger something under the existing contract. It is only, in our position, legally required to go to renewal because there's a proposed agency action. But, in fact, the commission has said, and I can go on. Trust me. Is that? No. The commission has specifically said, and I'll just give you a couple of very quick sites, in our supplemental excerpts of record at pages 24 and 7, in particular, we said, you should be talking about what's going on now and the need for any interim measures, but do it in the context of the ongoing, because it would be redundant anyway, do it in the context of the ongoing consultation as well. So to the extent petitiors say they're not doing anything about the current situation, we may not be required in the absence of a proposed agency action. But, in fact, we're considering things now. And if the preliminary biological opinion comes back in a few months and says, not only do we need changes at relicensing, but something needs to be done now, the commission will act on that. The commission often --- It will? Sure. I mean, the commission, there's a difference. There is a distinction to be made in the commission mentioned in the order. Sometimes we find it desirable to --- Prior to? I think it would depend on what the supporting evidence, whether they --- but, as a matter of fact, it would. So I don't know. I don't want to concede that we would be required to go. I would think that if they -- that it would exercise some discretion. I mean, if it was going to be keep everybody's house dark and on air condition for three hours a day so that you'd have a few more fish, then they might not. But if the opinion was all the fish are going to die unless you change the flow rates right now. Right. I guess they might still be inveterate salmon killers. But I don't think so. And then there's always, there's always, I mean, this particular case is about Section 7 and the agency's action. But there's Section 9- Let me tell you what I was getting at before. It sounds to me as though consultation has already begun and the formal right to consultation either has accrued or will shortly accrue so that the plaintiffs in this case can consult because the renewal is close. Is that true? Yes. Yes. I mean, they're absolutely- But they're already at the table. Consultation, absolutely. Since PG&E filed its intent to renew its license, I forget the exact title. They're already sitting at the table saying what to do about the dam. Yes. Yes. I mean, many parties have been involved. PG&E has been working for years with California Fish and Game. It's the same table on the same dam. Yes. What are we talking about besides whether to attach the consultation to the old permit issued long ago or the renewal that's coming up? We're talking about rigid timelines and a particular process. And we're talking about a case that would go beyond this case. And I know the Petitioners keep saying don't think about any other cases, but I believe Your Honor pointed out the practical effect for the entire HIDRO program, that if the Court found formal consultation was required here, that could have implications in other cases that it just isn't needed here. I don't want to use up all the time because I know PG&E is just about, but if the Court has no further questions, we'll give PG&E some time. Thank you. Brief them out. Your Honors, I'm William Madden, attorney for Pacific Gas and Electric Company. I think a couple of things I want to comment on. I think if you read your cases, you're going to find that essentially when it comes to the issue of action and reserved authority, it's a two-part test. You first have to determine, is there action? In the Turtle Island, there was action. They were issuing fishing permits. Is there reserved authority? In our case, you better believe there's a lot of reserved authority. But there's no action. Fundamentally, nobody is sure what action to take. And that's why, beginning in 1992, FERC began consulting outside the Endangered Species Act with the California agencies, with NOAA, with Fish and Wildlife Service, and has continued to consult and demand reports right up until the present day. Well, but this suit is requiring consultation, formal consultation. It is seeking formal consultation. It's seeking to ensure. As you read back through your decisions, you will find that case after case, even the Supreme Court case in Bennett v. Speer, unanimous decision, there has to be a proposed agency action. There is no proposed agency action here. We have been in informal consultation with NOAA since 2002, talking constantly with FERC, with NOAA, with the California Fish and Game Agency. We have been in early consultation. A preliminary biological assessment was filed by us with FERC in 2004 or 2005. FERC adopted it and sent it to the agency and asked them to produce a biological opinion. We're still waiting on it. But in view of the very favorable findings in the biological assessment, which was essentially keep the status quo, no new action, we are very confident we're going to get a favorable draft biological opinion. You ask what can happen in that situation. Four things can happen. First of all, the status quo can be endorsed. Nothing happens. Secondly, there could be a suggestion for a change in the tweaking that is now going on every day in the summertime. Release more water on a hot day, release less water on the other days. That's what happens today. And it could be that FERC will say and the agencies will say, let's tweak in a different way. We don't need FERC approval for that. We have authority under the existing license to do a lot of things within a certain range, and thus there would be no Federal agency action. There could be a finding. I don't know what it could be. You need a major operational change or a structural change. That could only take place with FERC action. FERC could very quickly turn that report into an Article 15 proceeding, issue notice, have a quick hearing, a paper hearing, and be done with it. Or there could be a finding, fourthly, of a take. That would be a PG&E problem. And we would then have to pursue a Section 9 and 10 activity with the agency or seek a biological proceeding at FERC, which is, by the way, commonly done in case after case in other licensing situations at FERC. Now, one thing I think the Court should also look at is what triggers all this. The listing of a species, that's what the When does the agency have to consult on the bald eagle? When it shows up? When a nest is there? When it goes away? No. FERC, in those kind of a cases, waits until a licensee has a proposed action. They want to sell some land on the reservoir. And in those cases, FERC has formally consulted. Is the bald eagle there? Is it going to be oppressed? And they follow action appropriately as dictated by the Fish and Wildlife Service. Same thing in this case. When we have a proposal, and I invite the Court to take a look carefully at Defenders of the Wildlife, the Simpson case, the Houston case, Benedictine Sphere, Turtle Island, you will find in there, in what I call unguarded moments, where the Court clearly noted that you need an initiation of affirmative agency action. If you kill fish with your dam at this time, are you subject to the criminal penalties of going to jail and paying fines and so forth? Very definitely. Under Section 9, that would be a take. We don't think that's happening. I mean, we're not running fish through the dam and through the turbines. That was the problem on the Columbia River. And when those fish were listed, the licensees quickly did one of two things. Some ran to FERC and said, quick, start an Article 15 proceeding and give us the chance to get a biological opinion and an incidental take statement or an incidental free ticket. Other agencies went to the agencies and said, please, let's consult under Section 10, let's get a habitat conservation plan which will give us an incidental take permit and protect us. Because we want to do a lot of things for the fish. And that's what happened. And in this situation, whether you like it or not, nobody knows the perfect answer. There is no action that someone is saying, let's take it. And the Petitioners repeatedly have said, we haven't a clue. We're not asking for an Article 15 proceeding. Let's just consult formally instead of informally. Oh, that's what the statute contemplates. I don't know. Right. I understand. You're not really saying that if they came in with a suit and said PG&E has to do this, this, and this, that you'd say, oh, great. If they did, if they had a good idea of what to do, they could file under Article 15, and we would sure heck be in a hearing or a proceeding to see if maybe they had the right idea and whether NOAA would support that. And that has happened in other cases, and progress has been made, and people moved along. Thank you very much. With the Court's indulgence, if I could make just a couple points here, and if you have any questions. Number one, I urge you to look back at the consistent law from this circuit that says that Section 7a.2 applies to ongoing agency actions, and the way it determines whether there is an ongoing Federal agency action or not is to look at the question as to whether the agency has retained sufficient jurisdiction to do something to benefit the species. That is what is said in Sierra Club v. Babbitt. That's what's said in the Epic case, and that's what's said in all these other cases. I would also point out that there is absolutely no case law cited that supports this distinction that FERC draws between having discretion to act and choosing to exercise that discretion. There is not a single case that says that that's of any legal significance whatsoever. Actually, as a practical matter, maybe we ought to wait for the preliminary biological opinion and see what FERC's reaction to it is before we start deciding issues that are not necessarily to be decided. What's wrong with that? That's what's wrong with that is that early consultation, which is what this biological opinion, whenever it comes out, will be on, applies by the law. It's a creature of Section 7A3 of the Endangered Species Act. Applies exclusively to the proposed relicensing of this project. It has no bearing. None of the things that come out of that will be mandatory or mandatorily applicable to the ongoing action, which is what we're concerned about. Mandatorily, FERC could react to it and utilize its retained discretion. They could indeed, Your Honor, but they have notice and hearing and then change immediately whatever needs to be changed. But they wouldn't have to. And what the question is, why are we deciding this if in a couple of months we're completely down the road and they're putting in the changes that we want? I would argue that, you know, that at this point, this species was listed in 1999, 10 years before this license was up. This license is up in to be renewed in October of 2009. But, and this frequently happens under the Federal Power Act, if all the details aren't worked out by then, the existing license can continue to be extended year by year without any changes indefinitely. And some of these things go on years more. So October 2009 is not a dead-end date. It seems to me that I heard counsel for both PG&E and the government indicate that if something positive came out of this consultation, that they would be actions taken in accordance to it. Well, that, Your Honor, I think gave my response, which would be that basically is saying, trust me. Under formal consultation on the existing ongoing project, certain legal ramifications come into play. The National Marine Fisheries Service, which is the expert agency on dealing with this fish and which has asked for formal consultation and been denied or refused by FERC, would have a stronger hand in proposing measures to protect the fish right now. And those measures could not be ignored. It doesn't give us, given the history of this project, let me say that it doesn't give us a lot of confidence. Okay. Thank you, counsel. Thank you. The case just argued is submitted for decision. Shall we just move on? Okay. We'll hear the last case on the calendar, which is California Sport Fishing Alliance v. FERC.
judges: Schroeder, Trott, Kleinfeld